IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Nathaniel Harold Green, ) | |
| ) | Civil Action No. 6:10-429-RMG-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Sheriff Wayne DeWitt, R. Driggers, ) | |
| K.P. Murphy, Sgt. Sanders, ) | |
| Lt. Riley, and Nurse Paula, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 52). The plaintiff, a pretrial detainee proceeding *pro se,* seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On July 27, 2010, the defendants filed a motion for summary judgment. By order filed July 28, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on August 19, 2010.

**FACTS PRESENTED**

The plaintiff is a pretrial detainee at the Hill-Finklea Detention Center ("HFDC") awaiting trial on charges of fraud and forgery for submitting a falsified money order in the

amount of $33,047.28 to the Berkeley County Clerk of Court for back child support (def. m.s.j., ex. 1). The crime was investigated by defendant Detective Murphy, and a warrant was issued for the plaintiff's arrest (*id.*). On October 12, 2009, the plaintiff was arrested on this outstanding warrant and transported to the HFDC (def. m.s.j., ex. 2). In his complaint, the plaintiff alleges constitutional violations of his rights secured under the Fourteenth Amendment. Specifically, he alleges a laundry list of jailhouse conditions that he claims violate his constitutional rights. These include: (1) no bed space available when he was first booked into the detention center, (2) denial of cleaning supplies, (3) intercom button not working, (4) overhead lights on 24/7, (5) overcrowding, (6) lack of grievance procedure, (7) no law library, (8) 90% of meals served are cold, (9) inadequate postage on envelopes, and (10) general allegations of officer misconduct. He seeks a monetary remedy of one million dollars for every day of his incarceration.

Defendant Wayne DeWitt is the Sheriff of Berkeley County. Defendants Driggers, Murphy, Riley, and Sanders are all employed with the Berkeley County Sheriff's Department, and Nurse Paula (aka Nurse Paula Brodie) is employed with an outside medical clinic that contracts to provide medical services to the detention center.

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is

entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

3

***Conditions of Confinement***

The plaintiff's claims fail on the merits.[1] Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* (citing *Bell,* 441 U.S. at 537). Absent a showing of expressed intent to punish on the part of correctional officials, the determination whether a particular condition or restriction is punishment generally turns on whether it is rationally connected to a legitimate non-punitive purpose and whether it is excessive in relation to that purpose. *Bell*, 441 U.S. at 538.

To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir.1991)). The United States Supreme Court has noted:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk of inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if

---
[1]The defendants also argue that the plaintiff failed to exhaust his administrative remedies. Since this court finds the claims fail on the merits, this argument will not be addressed.

4

> harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. *See* Prosser and Keeton §§ 2, 34, pp. 6, 213-214; *see also* Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680; *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer v. Brennan*,[2] 511 U.S. 825, 837-38 (1994) (brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)). The Due Process Clause is not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir.1995).

The District Court of South Carolina has expounded on *Farmer* and its progeny holding it is "clear that general knowledge of facts creating a substantial risk of harm is not enough." *Hitter v. Ozmint*, C.A. No. 2:06-1502-TLW-RSC, 2007 WL 680733, *4 (D.S.C. March 1, 2007). To state a claim, the plaintiff must show the official actually drew the inference between those general facts and the "specific serious risk of harm confronting the [plaintiff]." *Id.* (citing *Farmer*, 511 U.S. at 837). Deliberate indifference requires a showing that a prison official actually knew of and disregarded "an objectively serious condition, medical need, or risk of harm." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). To be sufficiently serious, the alleged "unconstitutional condition of confinement…must fail to meet the minimal civilized measure of life's necessities." *Majors v. Thompson*, C.A. No. 8:04-22432-HFF-BHH, 2006 WL 91569, *4 (D.S.C. January 13,

---

[2]The seminal case, *Farmer v. Brennan*, set forth the guidelines to evaluate a conditions of confinement claim pursuant to the Eighth Amendment. However, it is widely settled that the Due Process Clause of the Fourteenth Amendment guarantees pretrial detainees such "humane conditions of confinement," but the Eighth Amendment provides the benchmark for such claims. Thus, the standards set forth in *Farmer* are applicable even though the plaintiff is a detainee. *See Blaine v. Fox*, C.A. No. 8:07-807-RBH, 2007 WL 1423750, *3 n.2 (D.S.C. May 10, 2007) (citing *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)).

5

2006) (citing *Rhodes v. Chapman*, 452 U.S. 337, 341 (1981)). Importantly, "[t]here is, of course, a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977). Further, the Prison Litigation Reform Act ("PLRA") provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). *See Jones v. Price*, 696 F.Supp.2d 618, 625 (N.D. W. Va. 2010) (holding that prisoner's claim for compensatory damages was barred by Section 1997e(e) because the prisoner did not allege physical injury and that the PLRA did not bar the prisoner's claim for nominal or punitive damages).

Here, the plaintiff has not demonstrated that the defendants failed to provide him with humane conditions of confinement or that he suffered any actual injury as a result of the alleged conditions of his confinement. For instance, the plaintiff alleges that the "intercom button" is malfunctioning, that 90% of the meals served are cold, and that he was denied cleaning supplies, but he fails to produce evidence that this caused him any actual injury. Further, the plaintiff's allegations are general in nature, and they do not contain the requisite specificity in order to constitute a violation of his constitutional rights under the Fourteenth Amendment. For instance, the plaintiff makes general allegations regarding ants, overcrowding, sewage, lighting, and unstable walls. However, he has presented no evidence in support of his claims. Speculations of possible future injury do not meet the required standard. Further, the plaintiff has failed to show that the defendants were deliberately indifferent to the conditions he alleges. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk). Based upon the foregoing, summary judgment is appropriate on the plaintiff's conditions of confinement claims.

*Medical Indifference*

The plaintiff also alleges a claim of medical indifference. The plaintiff alleges that Nurse Paula denied his request on one occasion to see the doctor for pain in his leg and instead directed him to purchase ibuprofen from the canteen (comp. at 6). In response, Nurse Paula states in her affidavit that she made a nursing decision in response to the plaintiff's complaint of general pain in his leg on December 9, 2009, and advised him to treat the pain with ibuprofen. Nurse Paula was advised of no further complaints from the plaintiff until January 26, 2010, approximately 45 days later. After his second complaint, she referred the plaintiff to the detention center physician, who evaluated the plaintiff but gave no new orders for medications. The only other sick call request by the plaintiff was on May 12, 2010, when he complained of a sore throat. He was evaluated that same day by the physician, and no new orders for additional medications were given by the doctor. Further, the plaintiff informed the medical staff on the day he was booked into the HFDC that he was a diabetic and that he took medication for his diabetes. According to Nurse Paula's testimony, the plaintiff has continued to receive his diabetes medications at the HFDC since that time (Nurse Paula Brodie aff. ¶¶ 5-10).

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988)). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to

prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Burton*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The plaintiff has failed to establish that he had a serious medical need and that the defendants acted with deliberate indifference to his medical care. He makes only conclusory allegations without support of any kind. Accordingly, the claim fails.

8

*Law Library*

The plaintiff also alleges generally that his constitutional rights have been violated because the HFDC has no law library (comp. at 5). The United States Court of Appeals for the Fourth Circuit has ruled that the Constitution of the United States does not require every local jail even to have a law library. *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir.1987). The holding in *Magee* is based on the knowledge that county jails are generally short-term facilities, wherein "'the brevity of confinement does not permit sufficient time for prisoners to petition the courts.'" *Id.* "[I]nmates whose confinement is of a very temporary nature or for purposes of transfer to other institutions do not have a constitutional right to a law library." *Johnson v. Cannon*, C.A. No. 4:08-776-PMD, 2010 WL 936706, *7 (D.S.C. March 15, 2010) (citing *Jones v. Lexington County Det. Ctr.*, 586 F.Supp.2d 444, 448 (D.S.C.2008)). Moreover, the plaintiff has not alleged a specific injury from his alleged lack of access to law books at the detention center. *See Magee,* 810 F.2d at 452 (prisoner must show specific injury or actual harm from absence of law library when that prisoner was "housed only temporarily in a local jail").

The plaintiff also alleges in his complaint that Sgt. Rosemary Sanders interfered with his correspondence with a family court judge (comp. at 5). Sgt. Sanders testified in her affidavit that she never interfered with the plaintiff's attempts to correspond with the court (Sanders aff. ¶ 9). The plaintiff has failed to raise an issue of material fact with regard to this allegation. Based upon the foregoing, the plaintiff's claims fail.

*Respondeat Superior*

The plaintiff has failed to allege that defendants Sheriff DeWitt, Detective Murphy, Major Driggers, and Lt. Riley personally acted or failed to act in violation of his constitutional rights. Sheriff DeWitt is the Chief Law Enforcement Officer for Berkeley County; Detective Murphy was in charge of the criminal investigation that led to the charges against the

9

plaintiff; Major Driggers is an administrator at the Berkeley County Sheriff's Department, and Lt. Riley is the Deputy Director of the HFDC. These defendants were not personally involved in any of the alleged deprivations of the plaintiff's constitutional rights, nor did they have any knowledge of these alleged deprivations or conditions (*see* DeWitt, Murphy, Driggers, and Riley affs.). *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail.").

Furthermore, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29. The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Here, the plaintiff has failed to establish any of the elements required for supervisory liability.

## *Qualified Immunity*

Lastly, the defendants argue that they are entitled to qualified immunity as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified

10

immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). The plaintiff's conclusory allegations fail to demonstrate that the defendants violated his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 52) be granted.

s/Kevin F. McDonald
United States Magistrate Judge

November 1, 2010
Greenville, South Carolina

11